# SUPREME COURT OF THE UNITED STATES

---

No. 20A128

---

## JEFFERSON S. DUNN, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS v. WILLIE B. SMITH, III

### ON APPLICATION TO VACATE INJUNCTION

[February 11, 2021]

The application to vacate the injunction presented to JUSTICE THOMAS and by him referred to the Court is denied.

JUSTICE THOMAS would grant the application.

JUSTICE KAGAN, with whom JUSTICE BREYER, JUSTICE SOTOMAYOR, and JUSTICE BARRETT join, concurring in denial of application to vacate injunction.

Willie Smith is sentenced to death, and his last wish is to have his pastor with him as he dies. The Court of Appeals for the Eleventh Circuit, applying a statute designed to protect prisoners' religious rights, required Alabama to honor that request. I concur in the Court's decision to leave that order in place, and I write to explain why. Alabama has not carried its burden of showing that the exclusion of all clergy members from the execution chamber is necessary to ensure prison security. So the State cannot now execute Smith without his pastor present, to ease what Smith calls the "transition between the worlds of the living and the dead." Complaint in No. 2:20–cv–1026, Doc. 1, ¶65 (MD Ala.) (Complaint).

The governing law sets a high bar for Alabama to clear. The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides "expansive protection" for prisoners' religious liberty. *Holt* v. *Hobbs*, 574 U. S. 352, 358 (2015).

Under that statute, a prison may not "impose a substantial burden" on a prisoner's "religious exercise" unless doing so satisfies our strict-scrutiny test: The challenged policy must be "the least restrictive means of furthering [a] compelling governmental interest." 42 U. S. C. §2000cc–1(a). That standard, we have often explained, is "exceptionally demanding." *Holt*, 574 U. S., at 364. If any "less restrictive means is available for the Government to achieve its goals, then the Government must use it." *Id.,* at 365.

Alabama's policy substantially burdens Smith's exercise of religion. The State bars all clergy members from the execution chamber, leaving inmates to die without spiritual attendance. But Smith understands his minister's presence as "integral to [his] faith" and "essential to [his] spiritual search for redemption." Complaint ¶64; Decl. of Spencer Hahn in No. 2:20–cv–1026, Doc. 4–1, ¶14. His pastor, Smith says, will not only "relieve his struggle as he passes," but also help him "properly express to God his repentance." Complaint ¶¶65–66. The sincerity of those religious beliefs is not in doubt: Alabama acknowledges that Smith's request is "based on a religious belief and not some other motivation." Brief for Defendant-Appellee in No. 21–10348 (CA11), p. 24. So Alabama's policy must withstand strict scrutiny.

And it cannot. Prison security is, of course, a compelling state interest. But past practice, in Alabama and elsewhere, shows that a prison may ensure security without barring all clergy members from the execution chamber. Until two years ago, Alabama required the presence of a prison chaplain at an inmate's side. (It gave up the practice only when this Court barred States from providing spiritual advisors of just one faith.) Still more relevant, other jurisdictions have allowed clergy members with no connection to the government to attend an inmate's execution. In the last year, the Federal Government has conducted more than 10

executions attended by the prisoner's clergy of choice—exactly what Smith requests. And some States have chosen to follow the same practice. See also *post*, at 1 (KAVANAUGH, J., dissenting from denial of application to vacate injunction). Nowhere, as far as I can tell, has the presence of a clergy member (whether state-appointed or independent) disturbed an execution. That record "suggests that [Alabama] could satisfy its security concerns through a means less restrictive" than its current prohibition. *Holt*, 574 U. S., at 368–369.

The State's arguments to the contrary are unpersuasive. Alabama mainly asserts the need to close the execution chamber to all but those whom the warden has found "trustworthy." Application 30. But that does not justify the State's categorical bar. Alabama can take any number of measures to ensure that a clergy member will act responsibly during an execution. The State can do a background check on the minister; it can interview him and his associates; it can seek a penalty-backed pledge that he will obey all rules. See *Dunn* v. *Ray*, 586 U. S. \_\_\_, \_\_\_ (2019) (KAGAN, J., dissenting) (slip op., at 2). What the State cannot do, consistent with strict scrutiny, is simply presume that every clergy member will be untrustworthy—or otherwise said, that only the harshest restriction can work. See *Holt*, 574 U. S., at 369. Relatedly, Alabama identifies "disturbances [that] have arisen around executions in the past." Application 22. But its two examples concern close family members of inmates. The State cannot jump from those (dissimilar) incidents to a conclusion that even well-vetted clergy members risk disrupting an execution. Again, the State fails to recognize that RLUIPA places a heightened duty on prison officials: to demonstrate, not just "assume[,] that a plausible, less restrictive alternative would be ineffective" when their preferred approach burdens religion. *Holt*, 574 U. S., at 369.

For these reasons, the Eleventh Circuit was right to bar

Alabama from executing Smith without his pastor by his side.  The law guarantees Smith the right to practice his faith free from unnecessary interference, including at the moment the State puts him to death.

# SUPREME COURT OF THE UNITED STATES

_____

No. 20A128

_____

JEFFERSON S. DUNN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS v.
WILLIE B. SMITH, III

ON APPLICATION TO VACATE INJUNCTION

[February 11, 2021]

JUSTICE KAVANAUGH, with whom THE CHIEF JUSTICE joins, dissenting from denial of application to vacate injunction.

In 1991, Willie Smith murdered Sharma Ruth Johnson. Smith's execution was scheduled for tonight. Smith asked to have his spiritual advisor in the execution room. Alabama said no under its policy of excluding all spiritual advisors from the execution room, as distinct from the viewing room. The Eleventh Circuit enjoined the execution, stating that the State's policy likely violates the Religious Land Use and Institutionalized Persons Act. Because the State's policy is non-discriminatory and, in my view, serves the State's compelling interests in ensuring the safety, security, and solemnity of the execution room, I would have granted the State's application to vacate the injunction. See *Murphy* v. *Collier*, 587 U. S. ___ (2019) (statement of KAVANAUGH J., joined by ROBERTS, C. J., respecting grant of application of stay). But the Court has a different view and denies the State's application. Given the stays of execution here and in *Gutierrez* v. *Saenz*, 590 U. S. ___ (2020), it seems apparent that States that want to avoid months or years of litigation delays because of this RLUIPA issue should figure out a way to allow spiritual advisors into the execution room, as other States and the Federal Government have done. Doing so not only would satisfy inmates'

requests, but also would avoid still further delays and bring long overdue closure for victims' families.